**Opinion issued December 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

NO. 01-18-00993-CV

NO. 01-18-01064-CV

NO. 01-18-01071-CV

—————————————

**MASSACHUSETTS BAY INSURANCE COMPANY, Appellant**

**V.**

**LARRY ADKINS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF NEWBERN BROWN ADKINS, ET AL., Appellees**

—————————————

**LARRY ADKINS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF NEWBERN BROWN ADKINS, ET AL., Appellants**

**V.**

**AXIS INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, ST. PAUL PROTECTIVE INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, AND UNITED STATES FIRE INSURANCE COMPANY, Appellees**

—————————————

**DOROTHY WILSON, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ARLIE RICHARD ABLE, ET AL., Appellants**

**V.**

**AXIS INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY, ST. PAUL PROTECTIVE INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, AND UNITED STATES FIRE INSURANCE COMPANY, Appellees**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 2017-67350-ASB, 2017-67350-A, 2017-67246-A**

---

## O P I N I O N

These three appeals arise out of two asbestos-related personal injury lawsuits: the Adkins litigation, which was originally filed in 1995 in Jefferson County, Texas, and the Able litigation, originally filed in 1992 in Orange County, Texas. In 2017, both lawsuits were transferred to the 11th District Court of Harris County, which has been designated by the Texas Judicial Panel on Multidistrict Litigation as the court for pretrial matters in asbestos litigation ("the MDL court" or "the pretrial court"). Among other parties, the plaintiffs sued seven insurance companies in both the Adkins litigation and the Able litigation: Massachusetts Bay Insurance Company, Travelers Property Casualty Company, St. Paul Protective Insurance Company, Great American Insurance Company, AXIS Insurance Company, United States Fire

Insurance Company, and Nationwide Indemnity (on behalf of Wausau Insurance). All of the insurance companies except for Nationwide filed special appearances.

In the Adkins litigation, the MDL court denied Massachusetts Bay's special appearance and granted the special appearances of the other five insurance companies. The MDL court severed the claims against the other five insurance companies and dismissed those claims.

Two appeals arise out of the Adkins litigation. In appellate cause number 01-18-00993-CV, Massachusetts Bay appeals the MDL court's order denying its special appearance. In three issues, Massachusetts Bay argues that (1) the MDL court erred by concluding that it had waived its special appearance in the Adkins litigation; (2) the MDL court lacked general jurisdiction over it; and (3) the MDL court lacked specific jurisdiction over it.

In appellate cause number 01-18-01064-CV, the Adkins parties challenge the MDL court's orders refusing to remand the case to the original trial court and granting the other insurance companies' special appearances. In three issues, the Adkins parties argue that (1) the MDL court erred by denying the Adkins parties' motions to remand because the litigation had been improperly transferred to the MDL court by an insurance company that was not a party to the litigation; (2) the MDL court erred by denying the Adkins parties' motions to remand because, under Civil Practice and Remedies Code Chapter 90, the litigation was not subject to the

MDL rules; and (3) the MDL court lacked subject-matter jurisdiction to rule on the special appearances.

In the Able litigation, the trial court denied the Able parties' motions to remand the case to the original trial court and granted the special appearances of all six insurance companies. In appellate cause number 01-18-01071-CV, the Able parties challenge these orders of the trial court and raise the same issues on appeal that the Adkins parties raise in appellate cause number 01-18-01064-CV.

We affirm.

## MDL PROCEEDINGS AND ASBESTOS LITIGATION

Before we address the specific facts of these three cases, we first set out the relevant rules and statutes governing Multidistrict Litigation proceedings generally, statutes governing claims involving asbestos-related injuries, and statutes and rules governing MDL proceedings in asbestos cases specifically.

In 2003, the Texas Legislature created the Judicial Panel on Multidistrict Litigation (JPML). *See* TEX. GOV'T CODE ANN. §§ 74.161–.164. Government Code section 74.162 provides:

> Subject to Section 74.1625 and notwithstanding any other law, the judicial panel on multidistrict litigation may transfer civil actions involving one or more common questions of fact pending in the same or different constitutional courts, county courts at law, probate courts, or district courts to any district court for consolidated or coordinated pretrial proceedings, including summary judgment or other dispositive motions, but not for trial on the merits. A transfer may be made by the

4

judicial panel on multidistrict litigation on its determination that the transfer will:

> (1) be for the convenience of the parties and witnesses; and
>
> (2) promote the just and efficient conduct of the actions.

*Id.* § 74.162; *see id.* § 74.1625 (providing that JPML may not transfer most actions brought under the Deceptive Trade Practices Act or action brought under Texas Human Resources Code Chapter 36). The Legislature provided that the JPML "must operate according to rules of practice and procedure" adopted by the Texas Supreme Court and that the rules adopted must, among other things, "allow the panel to transfer related civil actions for consolidated or coordinated pretrial proceedings," "allow transfer of civil actions only on the panel's written finding that transfer is for the convenience of the parties and witnesses and will promote the just and efficient conduct of the actions," and "require the remand of transferred actions to the transferor court for trial on the merits." *Id.* § 74.163(a). The judge to whom an action is transferred "may preside over the transferred action as if the transferred action were originally filed in the transferor court." *Id.* § 74.164.

The JPML "may transfer cases to a pretrial court if they are related and transfer will further the goals of convenience, efficiency, and justice." *In re Farmers Ins. Co. Wind/Hail Storm Litig. 2*, 506 S.W.3d 803, 805 (Tex. J.P.M.L. 2016). Rule 13 of the Texas Rules of Judicial Administration, also enacted in 2003, governs multidistrict litigation proceedings and "aims to further these goals by

5

(1) eliminating duplicative and repetitive discovery, (2) minimizing conflicting demands on witnesses, (3) preventing inconsistent decisions on common issues, (4) reducing unnecessary travel, and (5) allocating finite judicial resources intelligently." *Id.* Rule 13 applies to (1) civil actions involving one or more common questions of fact that were filed in a constitutional county court, county court at law, probate court, or district court on or after September 1, 2003, and (2) civil actions filed before September 1, 2003, that involve claims for asbestos-related injuries "to the extent permitted by chapter 90 of the Texas Civil Practice and Remedies Code." TEX. R. JUD. ADMIN. 13.1(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. F app; *In re Silica Prods. Liab. Litig.*, 216 S.W.3d 87, 88 (Tex. J.P.M.L. 2006).

"A party in a case" may file a written motion with the JPMDL seeking transfer of the case and related cases to a pretrial court for consolidated or coordinated pretrial proceedings. TEX. R. JUD. ADMIN. 13.3(a) (providing who may file motion to transfer); TEX. R. JUD. ADMIN. 13.2(e) (defining "pretrial court"). The motion must, among other things, state the common question or questions of fact involved in the case and must contain "a clear and concise explanation of the reasons that transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of the cases." TEX. R. JUD. ADMIN. 13.3(a). The JPML may order transfer of the case and related cases to a pretrial court "if three members concur in a written order finding that related cases involve one or more

6

common questions of fact, and that transfer to a specified district court will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the related cases." TEX. R. JUD. ADMIN. 13.3(*l*); *In re Farmers Ins. Co. Wind/Hail Storm Litig. 2*, 506 S.W.3d at 805 ("This MDL Panel may transfer cases to a pretrial court if they are related and transfer will further the goals of convenience, efficiency, and justice."); *In re Wellington Ins. Co. Hailstorm Litig.*, 427 S.W.3d 581, 582–83 (Tex. J.P.M.L. 2014) ("Relatedness is a threshold question. If cases are not related we lack authority to assign them to an MDL pretrial judge, even if such an assignment would serve the interests of convenience and efficiency.").

Rule 13.5 provides that a case is deemed transferred from the original trial court to the pretrial court when a notice of transfer is filed with both courts. TEX. R. JUD. ADMIN. 13.5(a). After the notice of transfer is filed in the original trial court, "the trial court must take no further action in the case except for good cause stated in the order in which such action is taken and after conferring with the pretrial court." TEX. R. JUD. ADMIN. 13.5(b). After transfer, the trial court must transfer the case file to the pretrial court, and the clerk of the pretrial court "must establish a master file and open new files for each case transferred using the information provided in the notice of transfer." TEX. R. JUD. ADMIN. 13.5(c). The party that moved for transfer

7

"must pay the cost of refiling the transferred cases in the pretrial court, including filing fees and other reasonable costs." TEX. R. JUD. ADMIN. 13.5(d).

Rule 13 also addresses "tag-along cases," which the rule defines as "a case related to cases in an MDL transfer order but not itself the subject of an initial MDL motion or order." TEX. R. JUD. ADMIN. 13.2(g); *In re Champion Indus. Sales, LLC*, 398 S.W.3d 812, 819 (Tex. App.—Corpus Christi 2012, orig. proceeding). Rule 13.5(e) provides:

> A tag-along case is deemed transferred to the pretrial court when a notice of transfer—in the form described in Rule 13.5(a)—is filed in both the trial court and the pretrial court. Within 30 days after service of the notice, a party to the case or to any of the related cases already transferred to the pretrial court may move the pretrial court to remand the case to the trial court on the ground that it is not a tag-along case. If the motion to remand is granted, the case must be returned to the trial court, and costs including attorney fees may be assessed by the pretrial court in its remand order. The order of the pretrial court may be appealed to the MDL Panel by a motion for rehearing filed with the MDL Panel Clerk.

TEX. R. JUD. ADMIN. 13.5(e); *In re Silica Prods. Liab. Litig.*, 216 S.W.3d at 89 ("Rule 13.5(e) makes it easy to transfer a tag-along case to the pretrial court by simply filing a notice complying with rule 13.5(a)."); *In re Champion Indus. Sales*, 398 S.W.3d at 819 (stating that after notice is filed, "[t]he tag-along case is then automatically 'deemed' transferred"). To identify a proper tag-along case, the pretrial court uses the same standards "as those governing original Rule 13 motions to transfer." *In re Wellington Ins. Co. Hailstorm Litig.*, 427 S.W.3d at 584. For a tag-

along transfer to be proper, "there must be two distinct findings: that the cases are related *and* that placing them into one pretrial court will serve the interests of convenience and efficiency." *Id.* Rule 13.5(e) "applies only to cases filed *on or after* September 1, 2003." *In re Silica Prods. Liab. Litig.*, 216 S.W.3d at 90.

The assigned judge of the pretrial court "has exclusive jurisdiction over each related case transferred pursuant to this rule unless a case is retransferred by the MDL Panel or is finally resolved or remanded to the trial court for trial." TEX. R. JUD. ADMIN. 13.6(a). The pretrial court has the authority to decide all pretrial matters in all related cases transferred to that court, including jurisdiction, joinder, venue, discovery, trial preparation, mediation, and dispositive motions. TEX. R. JUD. ADMIN. 13.6(b); *In re Alcon S'holder Litig.*, 387 S.W.3d 121, 125 (Tex. J.P.M.L. 2010) (holding that Rule 13 gives pretrial court authority to rule on special appearances, noting that "it is pointless for the court to rule on other matters if it has no jurisdiction over the parties" and that "[i]t likewise makes sense for one pretrial judge to hear and rule on identical special appearances a single defendant has filed in multiple related cases"). The pretrial court can render a final and appealable judgment, and it may also "order remand of one or more cases, or separable triable portions of cases, when pretrial proceedings have been completed to such a degree that the purposes of the transfer have been fulfilled or no longer apply." TEX. R. JUD.

ADMIN. 13.7. Orders and judgments by the trial court or pretrial court may be appealed. TEX. R. JUD. ADMIN. 13.9(b).

In 2003, the MDL Panel named the 11th District Court of Harris County as a pretrial court for asbestos litigation cases. *See Union Carbide v. Adams*, 166 S.W.3d 1, 1 (Tex. J.P.M.L. 2003) (per curiam). The opinion creating the pretrial court named three specific pending cases—two pending in Galveston County and one pending in Dallas County—and stated "that transfer of these [named] cases and tag-along cases to one district judge will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the cases." *Id.* The cases transferred in the initial order creating the pretrial court did not include the cases at issue in these appeals. *See In re Union Carbide Corp.*, 145 S.W.3d 805, 806 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding) (per curiam) ("As of May 7, 2004, more than 1,500 asbestos cases had been transferred to the MDL Court.").

In 2005, the Texas Legislature added Chapter 90—entitled "Claims Involving Asbestos and Silica"—to the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 90.001–.058. In enacting Chapter 90, the Legislature made numerous legislative findings and set out the purpose of the Act enacting Chapter 90:

> (n)    It is the purpose of this Act to protect the right of people with impairing asbestos-related and silica-related injuries to pursue their claims for compensation in a fair and efficient manner through the Texas court system, while at the same time

preventing scarce judicial and litigant resources from being misdirected by the claims of individuals who have been exposed to asbestos or silica but have no functional or physical impairment from asbestos-related or silica-related disease. To that end, this Act:

(1) adopts medically accepted standards for differentiating between individuals with nonmalignant asbestos-related or silica-related disease causing functional impairment and individuals with no functional impairment;

(2) provides a method to obtain the dismissal of lawsuits in which the exposed person has no functional impairment, while at the same time protecting a person's right to bring suit on discovering an impairing asbestos-related or silica-related injury; and

(3) creates an extended period before limitations begins to run in which to bring claims for injuries caused by the inhalation or ingestion of asbestos or by the inhalation of silica to preserve the right of those who have been exposed to asbestos or silica but are not yet impaired to bring a claim later in the event that they develop an impairing asbestos-related or silica-related disease or injury.

*See* Act of May 16, 2005, 79th Leg., R.S., ch. 97, § 1, 2005 Tex. Gen. Laws 169, 170–71; *Adame v. 3M Co.*, 585 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (en banc) ("Chapter 90 created a bifurcated system to allow those with confirmed impairment to proceed to trial while those without a confirmed impairment would remain in the MDL, without any statute-of-limitations ramifications, until an impairment was confirmed.").

Section 90.003(a) imposes a requirement on claimants asserting an asbestos-related injury to serve a medical report on each defendant. TEX. CIV. PRAC. & REM.

CODE ANN. § 90.003(a); *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 46 (Tex. 2014); *In re Silica Prods. Liab. Litig.*, 216 S.W.3d at 89 n.4 ("Reports to be served on each defendant are required for asbestos-related claims in section 90.003 and for silica-related claims in section 90.004."). Specifically, section 90.003(a)(1) requires "[a] claimant asserting an asbestos-related injury" to "serve on each defendant":

(1)    a report by a physician who is board certified in pulmonary medicine, occupational medicine, internal medicine, oncology, or pathology and whose license and certification were not on inactive status at the time the report was made stating that:

(A)    the exposed person has been diagnosed with malignant mesothelioma or other malignant asbestos-related cancer; and

(B)    to a reasonable degree of medical probability, exposure to asbestos was a cause of the diagnosed mesothelioma or other cancer in the exposed person.

TEX. CIV. PRAC. & REM. CODE ANN. § 90.003(a)(1).[1] In an action pending on the date Chapter 90 becomes law—September 1, 2005—and in which the trial commences more than 90 days after Chapter 90 becomes law, a report must be served on each defendant "on or before the earlier of the following dates: (1) the

---

[1]    Section 90.003(a)(2) addresses reports in situations in which the claimant has asbestos-related pulmonary impairment but does not have mesothelioma or another asbestos-related cancer. TEX. CIV. PRAC. & REM. CODE ANN. § 90.003(a)(2).

12

60th day before trial commences; or (2) the 180th day after the date this chapter becomes law."[2] *Id.* § 90.006(c).

Section 90.010, entitled "Multidistrict Litigation Proceedings," provides:

(a)     The MDL rules apply to any action pending on the date this chapter becomes law [September 1, 2005] in which the claimant alleges personal injury or death from exposure to asbestos or silica unless:

    (1)     the action was filed before September 1, 2003, and trial has commenced or is set to commence on or before the 90th day after the date this chapter becomes law, except that the MDL rules shall apply to the action if the trial does not commence on or before the 90th day after the date this chapter becomes law;

    (2)     the action was filed before September 1, 2003, and the claimant serves a report that complies with Section 90.003 [relating to asbestos injuries] or 90.004 [relating to silica injuries] on or before the 90th day after the date this chapter becomes law; or

    (3)     the action was filed before September 1, 2003, and the exposed person has been diagnosed with malignant mesothelioma, other malignant asbestos-related cancer, or malignant silica-related cancer.

(b)     If the claimant fails to serve a report complying with Section 90.003 or 90.004 on or before the 90th day after the date this

---

[2]     Section 90.006 also provides that, for actions filed after Chapter 90 becomes law, the required medical report must be served on each defendant "not later than the 30th day after the date that defendant answers or otherwise enters an appearance in the action." TEX. CIV. PRAC. & REM. CODE ANN. § 90.006(a). For actions pending on the date Chapter 90 becomes law and in which the trial begins within 90 days of that date, the claimant is not required to serve a medical report "unless a mistrial, new trial, or retrial is subsequently granted or ordered." *Id.* § 90.006(b). Section 90.007 provides a dismissal procedure for failure to timely serve medical reports, but this section only applies to actions filed on or after September 1, 2005. *Id.* § 90.007.

chapter becomes law under Subsection (a)(2), the defendant may file a notice of transfer to the MDL pretrial court. If the MDL pretrial court determines that the claimant served a report that complies with Section 90.003 or 90.004 on or before the 90th day after the date this chapter becomes law, the MDL pretrial court shall remand the action to the court in which the action was filed. If the MDL pretrial court determined that the report was not served on or before the 90th day after the date this chapter becomes law or that the report served does not comply with Section 90.003 or 90.004, the MDL pretrial court shall retain jurisdiction over the action pursuant to the MDL rules.

. . . .

(d)     In an action that was pending on August 31, 2005, that was transferred to and remains pending in an MDL pretrial court, the MDL pretrial court shall not remand such action for trial unless:

(1)     the claimant serves a report complying with Section 90.003 or 90.004 . . . .

*Id.* § 90.010(a)–(b), (d).

Also in 2005, the Texas Supreme Court adopted Rule 13.11, which addresses civil actions filed before September 1, 2003, involving claims for asbestos- and silica-related injuries. Rule 13.11 applies to these actions "[t]o the extent permitted by chapter 90 of the Texas Civil Practice and Remedies Code." TEX. R. JUD. ADMIN. 13.11(a); *In re Silica Prods. Liab. Litig.*, 216 S.W.3d at 89 ("Chapter 90 of the [Civil Practice and Remedies Code] works in conjunction with [R]ule 13.11."). If, under Chapter 90, Rule 13.11 applies, a party seeking to transfer the case to the MDL court under section 90.010(b) must file a notice of transfer. TEX. R. JUD. ADMIN. 13.11(c) (stating required contents of notice); *In re Silica Prods. Liab. Litig.*, 216 S.W.3d at

14

89 ("In order to transfer an asbestos- or silica-related case that was filed before September 1, 2003, to an existing pretrial court, a party must file a 'notice of transfer under section 90.010(b).'"). "A case is deemed transferred from the trial court to the pretrial court when a notice of transfer is filed with the trial court . . . ." TEX. R. JUD. ADMIN. 13.11(e).

Once a notice of transfer is filed, Rule 13.11(f) limits the actions that the trial court can take to (1) ruling on a pending motion for severance, and (2) taking actions "for good cause stated in the order in which such action is taken and after conferring with the pretrial court." TEX. R. JUD. ADMIN. 13.11(f). Although Rule 13.11 does not contain express procedures for objecting to the transfer of an asbestos-related case to the pretrial court and requesting remand, it contemplates that such a request may occur, providing that if the case is remanded, the pretrial court may allocate costs among the parties and may award attorney's fees. TEX. R. JUD. ADMIN. 13.11(i); *In re Silica Prods. Liab. Litig.*, 216 S.W.3d at 89.

**FACTUAL BACKGROUND**

In 1995, plaintiffs, including Newbern Brown Adkins ("the Adkins parties"), all of whom were residents of Alabama, filed suit against Lincoln Electric Company and numerous other defendants in the 60th District Court of Jefferson County, Texas ("the Adkins litigation"). The Adkins parties alleged that they had been employed by companies that used products and materials that contained asbestos in their

15

facilities and, as a result of their employment, they had contracted asbestos-related diseases. The defendants included companies that had produced and manufactured asbestos products, companies that owned or controlled the facilities where the Adkins parties were employed, and insurance companies "which undertook to render safety audits, facilities inspections and other services" for the asbestos products manufacturers. Over the years, a total of 463 plaintiffs joined the Adkins litigation.

On August 3, 2017, the Adkins parties filed their forty-first amended petition. This petition alleged, for the first time, claims against insurance companies that had allegedly issued insurance policies to companies at which the Adkins parties were exposed to asbestos. The petition alleged that "[t]he defendants are actively engaged in business in the State of Texas." Among the insurance companies the Adkins parties sued were: AXIS Insurance Company, Great American Insurance Company, "Hanover Insurance Group (on behalf of Massachusetts Bay Insurance Company)," "Nationwide Indemnity (on behalf of Wausau Insurance)," St. Paul Protective Insurance Company, Travelers Property Casualty Company of America, and United States Fire Insurance Company. All of these companies, with the exception of Nationwide Indemnity, are parties to either appellate cause number 01-18-00993-CV or appellate cause number 01-18-01064-CV, the two Adkins appeals.

In 1992, plaintiffs, including Arlie Richard Able ("the Able parties"), all of whom were also residents of Alabama, filed suit against Lincoln Electric Company

and numerous other defendants in the 128th District Court of Orange County, Texas ("the Able litigation"). The Able parties raised claims identical to the Adkins parties' claims. A total of 790 plaintiffs joined the Able litigation.

The Able parties filed their twenty-first amended petition on August 2, 2017. This petition was the first to allege claims against the following insurance companies: AXIS, Great American, "Hanover Insurance Group (on behalf of Massachusetts Bay Insurance Company)," "Nationwide Indemnity (on behalf of Wausau Insurance)," St. Paul Protective, Travelers Property Casualty, and United States Fire. As in the Adkins litigation, the Able parties' amended petition alleged that the insurance companies were "actively engaged in business in the State of Texas." All of these companies, with the exception of Nationwide Indemnity, are parties to appellate cause number 01-18-01071-CV.

On September 13 and 14, 2017, Nationwide Mutual Insurance Company "on behalf of Wausau Insurance" filed an answer in both the Able and Adkins litigation. In the Adkins litigation, this filing was entitled "Defendant Nationwide Mutual Insurance Company's Original Answer," and the signature block stated, "Attorney for Defendant Nationwide Mutual Insurance Company."

On October 10, 2017, an attorney representing Nationwide Mutual Insurance Company filed in both the Adkins litigation and the Able litigation a "Notice of Transfer Under Rule 13 [of the Rules of Judicial Administration] of Tag-Along

Case." This notice—filed in the 60th District Court of Jefferson County, the 128th District Court of Orange County, and the 11th District Court of Harris County— stated:

> Please take notice that this case has been transferred by the Multidistrict Litigation Panel (the "MDL Panel") as a tag-along case to Cause No. 2004-03964, styled In re: Asbestos Litigation (the "MDL Litigation") pending before Judge Mark Davidson in the 11th Judicial District Court of Harris County (the "Pre-Trial Court") pursuant to Rule of Judicial Administration 13.
>
> . . . .
>
> Pursuant to Rule 13.5(b) and (e), the Court should take no further action in this case except for good cause stated in the Order in which such action is taken and after conferring with the Pre-Trial Court.

The signature block of this notice, like that in Nationwide Mutual's original answer, stated: "Attorney for Defendant Nationwide Mutual Insurance Company."

Each of the defendant insurance companies filed special appearances in both the Adkins and the Able litigation after those cases were transferred to the MDL court. The insurance companies alleged that they were all non-residents of Texas and that they lacked minimum contacts with Texas to support either general or specific jurisdiction. Massachusetts Bay filed its special appearance in the Adkins litigation in the MDL court on June 20, 2018.

On October 11, 2017, one day after Nationwide Mutual filed the notice of transfer, Massachusetts Bay filed a pleading in the Adkins litigation that contained special exceptions, a plea to the jurisdiction, and a verified original answer in the

18

Jefferson County court. Massachusetts Bay generally denied every allegation in the Adkins parties' forty-first amended petition. It argued that the Adkins parties had not alleged facts sufficient to determine that the trial court had subject-matter jurisdiction. It requested that the trial court grant its plea to the jurisdiction "and award [Massachusetts Bay] a take nothing judgment," and it specially excepted to several portions of the amended petition. It also asserted numerous affirmative defenses and verified pleas. This pleading did not address personal jurisdiction.

Shortly after the notice of transfer was filed, the Adkins and Able parties moved to remand the case from the MDL court to the Jefferson County court, arguing that the case was not a "tag along" case subject to transfer to the MDL court. The Adkins and Able parties argued that the case was "specifically excluded from the jurisdiction of the" MDL court under Texas Civil Practice and Remedies Code section 90.010(a)(3) because all of the Adkins and Able parties had filed suit prior to September 1, 2003, and each of them had been diagnosed with "malignant mesothelioma or other malignant asbestos-related cancer." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(a)(3) (providing that MDL rules apply to actions pending at time Chapter 90 becomes effective [September 1, 2005], in which claimant alleges personal injury or death from exposure to asbestos or silica unless "the action was filed before September 1, 2003, and the exposed person has been diagnosed with malignant mesothelioma, other malignant asbestos-related cancer, or malignant

19

silica-related cancer"). The Adkins and Able parties also filed a motion requesting that the MDL court "stay and continue" all special appearances until the court had the opportunity to rule on the motion to remand, which implicated the court's subject-matter jurisdiction to hear the case.

It is undisputed that, although the Able parties and Adkins parties filed their suits in 1992 and 1995, respectively, Chapter 90 was enacted in 2005, and the amended petition naming the insurance companies as defendants was filed in 2017, the plaintiffs have never filed or served the medical reports required by section 90.003. Furthermore, the plaintiffs' amended petitions only allege as follows with respect to their injuries:

> As a result of exposure to asbestos materials and products in the Plant Facilities, Plaintiffs contracted one or more asbestos-related diseases, have either contracted asbestos-related cancer or have an increased risk of contracting cancer, and suffer from cancerphobia or have died from one of these asbestos-related diseases as a result of asbestos exposure.

The plaintiffs do not allege that *each* claimant has mesothelioma or another asbestos-related cancer.

On April 26, 2018, after a hearing, the MDL court entered an order denying the Adkins and Able parties' motions to remand their cases to their respective courts of origin. The MDL court stated in this order:

> None of the Plaintiffs in this case served a report complying with Tex. Civ. Prac. & Rem. Code §90.003 within ninety (90) days of the

20

enactment of the law establishing the MDL. The Court therefore finds that the exception to jurisdiction of the MDL court set forth in Tex. Civ. Prac. & Rem. Code §90.010(a) does not apply in this case.

The Court further finds that the Plaintiffs presented no evidence at the April 6, 2018 hearing that any of the Plaintiffs have been diagnosed with malignant mesothelioma. Plaintiffs did submit certain medical records as an exhibit to their Motion to Remand. These were filed and served on Defendants some thirteen (13) years after the statute creating the MDL went into effect. Plaintiffs have acknowledged that the inclusion of those medical records with the Motion to Remand was not intended to be service of reports under Tex. Civ. Prac. & Rem. Code §90.010(a)(2).[3]

Based upon the entire record in this case, Plaintiffs' Motion for Remand is DENIED.

Plaintiffs have requested ninety (90) days to conduct jurisdictional discovery prior to ruling on the Special Appearances. The Motion for Jurisdictional Discovery is GRANTED to the extent set forth in this Order. The Court will allow the Plaintiffs ninety-seven (97) days to conduct discovery that is limited to and narrowly focused on jurisdictional issues that are predicated upon the allegations based upon Plaintiffs' petition.

The Adkins and Able parties requested that the trial court reconsider its order denying their motion to remand the case. In a memorandum supporting their request for reconsideration, the Adkins and Able parties stated, "The Defendant, Nationwide Insurance Company, transferred the above-captioned action from the District Court of Jefferson County to this Court in its capacity as the multidistrict (MDL) pretrial

---

[3]    Neither the Adkins parties nor the Able parties have ever served the medical reports required by section 90.003(a). The Adkins and Able parties acknowledge on appeal that this statutory requirement applies to them and that they will need to submit compliant medical reports, but they argue that they will submit the reports to the Jefferson County and Orange County courts, respectively, and not to the MDL court.

21

court for asbestos and silica litigation." The Adkins and Able parties also argued that, under the plain language of section 90.010(a), because they fell under subsection (a)(3), they were, contrary to the MDL's court ruling, not required to serve a medical report within ninety days.

They also argued that, contrary to the MDL court's ruling, twenty-four of the Adkins parties and seventeen of the Able parties had been diagnosed with malignant mesothelioma and the remaining parties had been diagnosed with asbestos-related cancers, and they presented an affidavit from a doctor as well as medical records in support. The Adkins parties also filed a separate motion seeking remand to the Jefferson County court, and the Able parties filed a separate motion seeking remand to the Orange County court. This motion raised the same arguments as the Adkins and Able parties' motions for reconsideration, but both the Adkins parties and the Able parties acknowledged that two plaintiffs in each of their cases did not have a qualifying medical diagnosis and so remand to the Jefferson County court and Orange County court was not appropriate for those four parties.

In August 2018, the Adkins and Able parties amended their petitions and added additional jurisdictional allegations. The amended petitions stated that the insurance companies are subject to personal jurisdiction in Texas as follows:

(a)    General jurisdiction exists because:

    (1)    "Defendant Insurers" are actively engaged in business in the State of Texas under the Texas long-arm statute;

22

(2)    "Defendant Insurers" have Texas affiliations so continuous, systematic, and substantial as to permit general jurisdiction by their business activities in the State of Texas;

(3)    "Defendant Insurers" have contacts and business in the State of Texas which are comparable to in-state insurance companies;

(4)    "Defendant Insurers" are regulated under Texas law substantially the same as in-state insurance companies; [and]

(5)    The exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees.

(b)    Specific jurisdiction exists because:

(1)    "Defendant Insurers" provided insurance coverage subject to the underlying litigation;

(2)    "Defendant Insurers" provided insurance coverage for events which occurred in the State of Texas, namely the underlying litigation;

(3)    "Defendant Insurers" provided insurance coverage for the operative facts of the underlying litigation;

(4)    Plaintiffs have a direct action claim against "Defendant Insurers" resulting from the underlying litigation; Ala. Code § 27-23-2 [and]

(5)    The exercise of jurisdiction is consistent with federal and state constitutional due process-guarantees.

The Adkins parties also alleged that Massachusetts Bay had "waived challenges to jurisdiction by entering a general appearance into this litigation, thereby consenting to jurisdiction in Texas."[4]

---

[4]    This argument was raised only in the Adkins litigation. It is undisputed that, in the Able litigation, Massachusetts Bay's first filing was its special appearance.

23

In a separate filing, the Adkins parties expanded on their allegation that Massachusetts Bay had waived its special appearance. They argued that on October 11, 2017—the day after Nationwide Mutual filed the notice of transfer stating that the Adkins litigation had been transferred to the MDL court—Massachusetts Bay filed special exceptions, a plea to the jurisdiction, and an original answer in the Jefferson County court, but this pleading did not mention personal jurisdiction. The Adkins parties argued that this pleading was filed more than eight months before Massachusetts Bay filed its special appearance in the MDL court in June 2018, and, therefore, Massachusetts Bay violated the due order of pleading requirement and generally appeared.

Massachusetts Bay responded to the Adkins parties and argued that it had not waived its special appearance. It argued that its special appearance, filed in June 2018, was the first pleading that it filed in the Harris County MDL court—a new proceeding with a new cause number—and that its October 11, 2017 filing in the Jefferson County court did not waive its special appearance. Massachusetts Bay pointed out that, in its ruling on the Adkins parties' motion to remand, the MDL court ruled that the "exception to jurisdiction of the MDL court set forth in [Civil Practice and Remedies Code section] 90.010(a) does not apply to this case," meaning, it argued, that "the effect of the order is that the Jefferson County court did not have jurisdiction" after the case was transferred. Massachusetts Bay also argued

24

that when the Adkins parties amended their petition in August 2018, they added additional, and severable, allegations, and it filed a supplemental special appearance in response to those new allegations.

The MDL court held a hearing on all pending motions on September 14, 2018. At this hearing, the Adkins and Able parties argued that the transfer to the MDL court was improper because the entity that "tagged" the case for transfer—Nationwide Mutual Insurance Company—was not a named defendant in the case.[5] The MDL court had the following exchange with Nationwide's counsel:

The Court: Who tagged this case to the MDL?

Counsel: The—so Nationwide Mutual Insurance Company on behalf of Wausau Insurance.

The Court: Nationwide tagged it—

Counsel: The rest is important. Nationwide Mutual Insurance Company on behalf of Wausau Insurance.

The Court: Why didn't Wausau Insurance tag it?

Counsel: Because they exist but not with respect to this anymore. Nationwide—this gets into the difference between mutuals and insurance companies.

---

[5] The Adkins parties first raised this argument in their "Opposition to the Jurisdictional Objections of Nationwide Indemnity Company," filed on August 13, 2018. The majority of this filing was devoted to arguing that Nationwide Mutual and Nationwide Indemnity were alter egos such that, because Nationwide Mutual had generally appeared, Nationwide Indemnity could not challenge personal jurisdiction. They also argued that, if the parties were not alter egos, then Nationwide Mutual's notice of transfer was a nullity because Nationwide Mutual was not a named defendant in the Adkins litigation. They argued that because it was not a named defendant, it could not transfer the case to the MDL court and the MDL court therefore lacked subject-matter jurisdiction.

Nationwide Mutual Insurance Company had an affiliation from, like, 1983 to 1991 with Liberty Mutual Insurance Company. When they disaffiliated under the regulations that relate to mutuals, part of it required Nationwide Indemnity Insurance Company to reinsure all pre-1986 liabilities for Wausau Insurance Company. So the affiliation was between Nationwide Mutual Insurance Company and Wausau Mutual Insurance Company.

So the mutual holds the liability. The indemnity has the obligation to pay for any of those claims. So mutual is the proper party, so that's how we answered.

The Court: But if the party—if the defendant that was named—if the ability to tag a case to the MDL is limited to the defendant that was named, if it is, and the defendant that was named didn't tag it, then was the tag—then tell me why the tag was proper, if the statute says that the defendant has to tag, not the party that's covering their liability . . . not the party that's doing it in their name. It has to be [the] defendant.

Counsel: Because the defendant is Wausau Insurance and the only person that can appear for them is Nationwide Mutual because the way they are sued is "Nationwide Insurance Company on behalf of."

It's the "on behalf of" that's the defendant, and only the mutual can appear on behalf of Wausau. So the tag is correct under the statute if only the defendant can do it because the indemnity company—otherwise, nobody can answer—nobody can appear.

The Adkins and Able parties confirmed that they named "Nationwide Indemnity on behalf of Wausau" as a defendant. The Adkins and Able parties argued that the tag was improper and deprived the MDL court of subject-matter jurisdiction, however, because they named "Nationwide Indemnity (on behalf of Wausau Insurance)" as a

26

defendant, but Nationwide Mutual answered and sent the notice of tag-along transfer, and Nationwide Mutual was not a named defendant.

The MDL court also heard arguments on the insurance companies' special appearances at this hearing. In addition to the merits of the defendants' special appearances—whether the Adkins and Able parties had demonstrated either general or specific jurisdiction—the Adkins parties also argued that Massachusetts Bay had waived its special appearance in the Adkins litigation by filing a pleading in the Jefferson County court before it filed its special appearance in the MDL court. The MDL court requested that Massachusetts Bay provide a written response to the Adkins parties' waiver argument.

On October 12, 2018, in the Adkins litigation, the MDL court signed an order granting the special appearances of Travelers, St. Paul, Great American, AXIS, and U.S. Fire, and the court dismissed the Adkins parties' claims against these insurance companies with prejudice. In this order, the MDL court denied Massachusetts Bay's special appearance. The trial court severed the claims against Travelers, St. Paul, Great American, AXIS, and U.S. Fire into a separate cause number. The MDL court also denied the Adkins parties' motion for reconsideration of the court's denial of their motion to remand the case to Jefferson County, as well as their second motion to remand.

On the same day, the MDL court signed an order denying the Able parties' motion for reconsideration of their motion to remand the case to Orange County and their second motion to remand. In a separate order, the MDL court granted the special appearances of all the insurance defendants: AXIS, Great American, Massachusetts Bay, St. Paul Protective, Travelers Property Casualty, and U.S. Fire. The MDL court severed the Able parties' claims against these defendants and dismissed these claims with prejudice.

In appellate cause number 01-18-00993-CV, Massachusetts Bay appeals the MDL court's denial of its special appearance in the Adkins litigation. In appellate cause number 01-18-01064-CV, the Adkins parties appeal the MDL court's denial of their motion to remand the case to Jefferson County and their motion for reconsideration, as well as the MDL court's order granting the special appearances of Travelers, St. Paul, Great American, AXIS, and U.S. Fire. In appellate cause number 01-18-01071-CV, the Able parties appeal the MDL court's denial of their motion to remand the case to Orange County and their motion for reconsideration, as well as the MDL court's order granting the special appearances of all six insurance defendants.

## MASSACHUSETTS BAY'S APPEAL

In its first issue, Massachusetts Bay contends that the MDL court erred by impliedly concluding that, by filing an answer in the Jefferson County court the day

after Nationwide Mutual transferred the Adkins litigation to the MDL court in Harris County, Massachusetts Bay violated the due-order-of-pleading requirement and made a general appearance in the Adkins litigation.

## A. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). When, as here, the trial court does not issue findings of fact and conclusions of law relating to its decision on a special appearance, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Bell*, 549 S.W.3d at 558 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)). When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive, and a party may challenge the implied findings for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

## B. Governing Law

A party may challenge a trial court's personal jurisdiction over it by filing a special appearance. TEX. R. CIV. P. 120a(1); *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 224 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A party may file a special appearance "as to an entire proceeding or as to any severable claim

involved therein." TEX. R. CIV. P. 120a(1). A defendant must strictly comply with the procedural requirements in Rule 120a(1) or it waives its jurisdictional challenge and enters a general appearance. *Nationwide Distrib. Servs.*, 496 S.W.3d at 224; *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("Unlike subject-matter jurisdiction, which concerns a court's jurisdiction to hear a case and cannot be waived, personal jurisdiction concerns a court's jurisdiction over a particular party and can be waived.").

Rule 120a(1) provides:

Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion; provided however, that a motion to transfer venue and any other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance; and may be amended to cure defects. The issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance. Every appearance, prior to judgment, not in compliance with this rule is a general appearance.

TEX. R. CIV. P. 120a(1). Rule 120a dictates the "order in which pleadings may be filed with respect to the filing of a special appearance—the due-order-of-pleading requirement"—as well as the "order in which motions may be heard with respect to a special appearance—the due-order-of-hearing requirement." *Trenz,* 388 S.W.3d at 800. A party waives its special appearance and enters a general appearance "when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks

30

affirmative action from the court." *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam) (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)); *Nationwide Distrib. Servs.*, 496 S.W.3d at 224.

Rule 120a(1) also provides that "[a] special appearance may be made as to an entire proceeding or as to any severable claim involved therein." TEX. R. CIV. P. 120a(1). A claim is severable if (1) the controversy involves more than one cause of action, (2) the severed claim would be the proper subject of a lawsuit if asserted independently, and (3) the claim to be severed is not so interwoven with the remaining action that they involve the same facts and issues. *Man Indus. (India) Ltd. v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 309 S.W.3d 589, 591 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007)).

## C. Waiver of Special Appearance

Massachusetts Bay argues that the trial court erred to the extent that it impliedly concluded that Massachusetts Bay had waived its special appearance in the Adkins litigation by filing an answer in the Jefferson County court one day after Nationwide Mutual had filed the notice transferring the case to the MDL court.

In support of its contention that it did not generally appear when it filed its answer in Jefferson County, Massachusetts Bay first argues that the notice of transfer of the case to the MDL court under Rule 13.5 immediately deprived the Jefferson

31

County court of jurisdiction and, therefore, Massachusetts Bay's answer, filed one day after the notice of transfer, was a legal nullity and had no effect. It contends that its initial filing should therefore be considered the special appearance that it filed in the MDL court on June 20, 2018.

We disagree with Massachusetts Bay that the mere filing of a notice to transfer deprives the original trial court—here, the Jefferson County court—of jurisdiction over the case such that Massachusetts Bay's answer, filed in the Jefferson County court, should be treated as a legal nullity. Rule 13.5(b) itself—as well as Rule 13.11(f), which is specifically applicable to asbestos litigation—provides that "[a]fter notice of transfer is filed in the trial court, the trial court must take no further action in the case *except for good cause* stated in the order in which such action is taken and after conferring with the pretrial court." TEX. R. JUD. ADMIN. 13.5(b) (emphasis added); TEX. R. JUD. ADMIN. 13.11(f)(2) ("After a notice of transfer is filed, the trial court must take no further action in the case except . . . for good cause stated in the order in which such action is taken and after conferring with the pretrial court.").

Rule 13.5(b) and 13.11(f) therefore both provide that, after a notice of transfer is filed, the original trial court can take action, albeit in limited circumstances: "for good cause stated in the order in which such action is taken and after conferring with the pretrial court." TEX. R. JUD. ADMIN. 13.5(b); TEX. R. JUD. ADMIN. 13.11(f)(2).

32

Concluding that filing of the notice of transfer completely deprives the original trial court of jurisdiction over the case is therefore inconsistent with the text of Rules 13.5 and 13.11. Massachusetts Bay cites no law holding to the contrary.

Massachusetts Bay next argues that the MDL court erred by impliedly concluding that "the Harris case" and "the Jefferson case" are the same proceeding, such that its answer, filed in "the Jefferson case," constituted a general appearance in "the Harris case." *See* TEX. R. CIV. P. 120a ("A special appearance may be made as to an entire proceeding or as to any severable claim involved therein."). Massachusetts Bay argues that two separate proceedings existed in this case: (1) proceedings in the Jefferson County court, under the original cause number assigned when that case was filed in 1995, and (2) proceedings in the MDL court in Harris County, under a separate cause number and a new petition filed by the Adkins parties. We disagree with Massachusetts Bay that the proceeding in the Harris County MDL court is a "new" proceeding for purposes of Rule 120a.

The Adkins parties initially filed suit in Jefferson County in 1995 under cause number B-150,896-AK. They filed their forty-first amended petition in August 2017, and this petition was the first to assert claims against Massachusetts Bay. The Adkins litigation was then transferred to the MDL court in Harris County on October 10, 2017, where it received a new cause number, 2017-67350-ASB. After filing a motion to remand the case to Jefferson County, the Adkins parties then filed their

33

forty-second amended petition in the MDL court on January 12, 2018.[6] All subsequent filings by the parties occurred in the MDL court.

Rather than its being a separate proceeding, we conclude that the proceeding in the MDL court in Harris County was simply a continuation of the proceeding in Jefferson County, albeit in a different court in a different county. Rules 13.5 and 13.11, which contain provisions relevant to the transfer of files between courts and payment of filing fees, lend support to this conclusion. Rule 13.5(c) provides that when a case is transferred to an MDL pretrial court, the original trial court must transmit the case file to the pretrial court. TEX. R. JUD. ADMIN. 13.5(c); TEX. R. JUD. ADMIN. 13.11(h) ("The pretrial court may order the trial court clerk to transfer a case file to the pretrial court."). The party moving for the transfer must pay the cost "of refiling the transferred cases in the pretrial court, including filing fees and other reasonable costs." TEX. R. JUD. ADMIN. 13.5(d); TEX. R. JUD. ADMIN. 13.11(i) ("A

---

[6]    Massachusetts Bay characterizes this pleading, filed in January 2018, after transfer to the MDL court as a "new" petition. This pleading was captioned "Plaintiffs' Forty-Second Amended Petition" and the caption included references to both Harris County and Jefferson County. The Adkins parties later filed a forty-third amended petition in August 2018, after the parties conducted jurisdictional discovery. Massachusetts Bay also argues that "none of the pleadings from . . . Jefferson County were transferred over. Rather, each party had to newly file any pleadings with the court clerk in Harris County." All of the pleadings Massachusetts Bay cites to, however, are the special appearances of the various insurance companies, all of which were filed, in the first instance, in the MDL court. There is no indication in the record that the insurance companies—other than Nationwide Mutual, which filed an answer—made any filings in the Jefferson County court before the notice of transfer was filed.

34

defendant who files a notice of transfer must pay the cost of filing the case in the pretrial court, including filing fees and other reasonable costs."). When a case is remanded to the trial court from the MDL court, the clerk of the MDL court is directed to send the case file back to the original trial court, and the clerk of the trial court is directed to "reopen the trial court file under the cause number of the trial court, without a new filing fee." TEX. R. JUD. ADMIN. 13.7(c). Although the case might receive a new cause number in the MDL pretrial court, and the plaintiff might file an amended petition in that court, the case is the same case as that filed in the original trial court, but now going forward in a new court and under the MDL rules. We conclude that if a case is transferred from the original trial court to the MDL court, it should be considered one "proceeding" for purposes of Rule 120a.

Massachusetts Bay also argues that Rule 120a allows a party to file a special appearance "for the purpose of objecting to the jurisdiction of *the court* over the person or property of the defendant," but at the time it filed its answer in the Jefferson County court, that court had lost power to hear the case and the case was pending in the MDL court. Massachusetts Bay argues that its answer, filed in the Jefferson County court, did not invoke the judgment of the MDL court on a question other than jurisdiction, seek affirmative action from the MDL court, or recognize that the case was properly pending before the MDL court. The purpose of a special appearance, however, is to contest the ability of all courts in the forum state—not a

35

particular district court—to exercise personal jurisdiction over a defendant. *See Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("The words 'not amenable to process' mean that the special appearance is available solely to establish that the Texas court cannot, under the federal and state constitutions and the applicable state statutes, validly obtain jurisdiction over the person or property of the defendant with regard to the cause of action pled."); *see also* TEX. R. CIV. P. 120a(1) ("[A] special appearance may be made by any party . . . for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process *issued by the courts of this State*.") (emphasis added). It is therefore irrelevant that Massachusetts Bay's answer did not invoke the judgment *of the MDL court specifically* on a question other than jurisdiction or seek affirmative action *from the MDL court specifically*. What is relevant is that, by filing its answer, unconditioned by a special appearance, Massachusetts Bay acknowledged that the case was properly pending before *a Texas court*. *See Exito Elecs. Co.*, 142 S.W.3d at 304 (stating that defendant waives its special appearance and enters a general appearance when it (1) invokes judgment of court on any question other than court's jurisdiction, (2) recognizes by its acts that action is properly pending, or (3) seeks affirmative action from court).

36

Finally, Massachusetts Bay argues that the trial court erred by impliedly concluding that it waived its special appearance as to the Adkins parties' "brand-new severable claims" filed in its forty-third amended petition filed in August 2018, after Massachusetts Bay had filed its special appearance in June 2018. Massachusetts Bay then filed a supplemental special appearance. We disagree that the Adkins parties' forty-third amended petition alleged claims that were severable from the claims asserted in the forty-first amended petition, the first petition that specifically named Massachusetts Bay as a defendant.

Rule 120a(1) allows a defendant to file a special appearance as to the entire proceeding or as to any severable claim involved. TEX. R. CIV. P. 120a(1). The Adkins parties, in their forty-third amended petition, filed after all the insurance companies filed special appearances, included new jurisdictional allegations. Specifically, this petition alleged:

(a) General jurisdiction exists because:

   (1) "Defendant Insurers" are actively engaged in business in the State of Texas under the Texas long-arm statute;

   (2) "Defendant Insurers" have Texas affiliations so continuous, systematic, and substantial as to permit general jurisdiction by their business activities in the State of Texas;

   (3) "Defendant Insurers" have contacts and business in the State of Texas which are comparable to in-state insurance companies;

37

(4) "Defendant Insurers" are regulated under Texas law substantially the same as in-state insurance companies; [and]

(5) The exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees.

(b) Specific jurisdiction exists because:

(1) "Defendant Insurers" provided insurance coverage subject to the underlying litigation;

(2) "Defendant Insurers" provided insurance coverage for events which occurred in the State of Texas, namely the underlying litigation;

(3) "Defendant Insurers" provided insurance coverage for the operative facts of the underlying litigation;

(4) Plaintiffs have a direct action claim against "Defendant Insurers" resulting from the underlying litigation; Ala. Code § 27-23-2 [and]

(5) The exercise of jurisdiction is consistent with federal and state constitutional due process-guarantees.

Massachusetts Bay filed a supplemental special appearance, arguing that the Adkins parties' allegations that it had provided insurance coverage, and their direct action claim under Alabama law, were "brand new" and were severable from the Adkins parties' other claims.

A claim is severable if (1) the controversy involves more than one cause of action, (2) the severed claim would be the proper subject of a lawsuit if asserted independently, and (3) the claim to be severed is not so interwoven with the remaining action that they involve the same facts and issues. *Man Indus. (India) Ltd.*, 309 S.W.3d at 591. Massachusetts Bay has not, either in the trial court or in its

briefing on appeal, argued that the claims to be severed—claims for insurance coverage and the direct action claim—are not so interwoven with the remaining claims in the action that they involve the same facts and issues. We conclude that these new allegations in the Adkins parties' forty-third amended petition do involve the same facts and issues as their remaining claims—namely, whether Massachusetts Bay provided insurance coverage to any of the defendant companies that employed the Adkins parties when their injuries accrued. These claims, therefore, are not severable from the Adkins parties' other claims. *See id.*

We conclude that because the first pleading filed by Massachusetts Bay in a Texas court in the Adkins litigation was its answer, special exceptions, and plea to the jurisdiction, which did not challenge the exercise of personal jurisdiction over it by a Texas court, the trial court did not err by impliedly concluding that Massachusetts Bay waived its special appearance and instead entered a general appearance. We hold that the trial court did not err by denying Massachusetts Bay's special appearance.

## ADKINS AND ABLE PARTIES' APPEALS

The Adkins and Able parties challenge the MDL court's orders denying their motions to remand their respective cases to Jefferson County and Orange County, as well as the court's orders granting the insurance companies' special appearances. They argue that the MDL court erred by denying the motions to remand because

(1) the actions had been improperly transferred to the MDL court by Nationwide Mutual, which was not a party to either of the actions, and (2) the Adkins and Able litigations were both filed before September 1, 2003, and each claimant had been diagnosed with asbestos-related cancer, meaning that, under Civil Practice and Remedies Code section 90.010(a)(3), the MDL rules did not apply to either action. The Adkins and Able parties argue that both of these issues deprived the MDL court of subject-matter jurisdiction over the actions and, therefore, the court's rulings on the insurance companies' special appearances are void. The Adkins parties also raise this argument in response to Massachusetts Bay's appeal and argue that, if we conclude that the MDL court properly denied Massachusetts Bay's special appearance, we should also conclude that the MDL court erred in denying the Adkins parties' motions to remand because the court lacked subject-matter jurisdiction.

## A.    Whether the Actions Were Properly Transferred to the MDL Court

The Adkins and Able parties argue that their cases were improperly transferred to the MDL court because Nationwide Mutual, the entity that filed the notice of transfer, was not a party to either action and therefore could not transfer the cases. The insurance companies argue that Nationwide Mutual was a party to the actions, or, at a minimum, Nationwide Mutual had intervened in the actions when it filed an answer in both cases and thus became a party to the suits. We agree with the

insurance companies that Nationwide Mutual intervened in the cases, became a party to the suits, and could permissibly seek transfer of the cases to the MDL courts.

Texas Rule of Civil Procedure 60 provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60; TEX. R. CIV. P. 45 (providing that pleadings in district courts shall "be by petition and answer"). Rule 60 authorizes a party with a justiciable interest in a pending lawsuit to intervene in the suit as a matter of right. *Nghiem v. Sajib*, 567 S.W.3d 718, 721 (Tex. 2019) (quoting *In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex. 2008)). A party has a justiciable interest in a lawsuit, and thus a right to intervene in the suit, when its interests will be affected by the litigation. *J. Fuentes Colleyville, L.P. v. A.S.*, 501 S.W.3d 239, 243 (Tex. App.—Fort Worth 2016, no pet.). "A person has the right to intervene 'if he could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof.'" *Smith v. City of Garland*, 523 S.W.3d 234, 241 (Tex. App.—Dallas 2017, no pet.) (quoting *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990)); *see J. Fuentes Colleyville*, 501 S.W.3d at 243 ("[T]he interest is 'analogous to that essential for a party to maintain or defend an action.'") (quoting *McCord v. Watts*, 777 S.W.2d 809, 811–12 (Tex. App.—Austin 1989, no writ)). Intervenors "can occupy the position of a defendant where

41

their claims and prayer align them with the defendant and pit them directly against the plaintiff, even if no parties assert claims against them." *In re Ford Motor Co.*, 442 S.W.3d 265, 275 (Tex. 2014) (orig. proceeding).

An intervenor is not required to obtain the court's permission prior to intervening instead; the party who opposes the intervention has the burden to challenge it by a motion to strike. *Nghiem*, 567 S.W.3d at 721; *Abdullatif v. Erpile, LLC*, 460 S.W.3d 685, 694 n.9 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Absent a motion to strike, one who files a petition in intervention generally becomes a party to the suit for all purposes."); *Harris Cty. v. Luna-Prudencio*, 294 S.W.3d 690, 699 (Tex. App.—Houston [1st Dist.] 2009, no pet.). If any party to the pending suit moves to strike the intervention, the intervenor bears the burden to show a justiciable interest in the suit. *Nghiem*, 567 S.W.3d at 721. Intervenors are parties to the lawsuit until the trial court grants a motion to strike. *Center Rose Partners, Ltd. v. Bailey*, 587 S.W.3d 514, 531 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Main Rehab. & Diagnostic Ctr., LLC v. Liberty Mut. Ins. Co.*, 376 S.W.3d 825, 828 (Tex. App.—Dallas 2012, no pet.) (noting that although plaintiffs filed response to petition in intervention opposing intervention, they never moved to strike intervention and did not obtain ruling from trial court striking intervention, and therefore holding that intervenor "was a party to the case in the trial court").

Here, in their respective amended petitions filed in August 2017, the Able and Adkins parties asserted claims against a group of insurance companies, including AXIS Insurance Company, Great American Insurance Company, "Hanover Insurance Group (on behalf of Massachusetts Bay Insurance Company)," St. Paul Protective Insurance Company, Travelers Property Casualty Company of America, and United States Fire Insurance Company. The parties also sued "Nationwide Indemnity (on behalf of Wausau Insurance)." Nationwide Mutual—a separate entity—was not named as a defendant in the Able and Adkins parties' amended petitions. Nevertheless, on September 13 and 14, 2017, Nationwide Mutual filed an answer in both the Able and Adkins litigations. In the Adkins litigation, this filing was entitled "Defendant Nationwide Mutual Insurance Company's Original Answer," and Nationwide Mutual "generally denie[d] each and every allegation contained in Plaintiffs' Forty-First Amended Petition" and reserved its right to amend its answer to plead affirmative defenses. Less than a month later, Nationwide Mutual filed a notice of transfer, transferring both the Able and the Adkins litigation to the MDL court as tag-along cases.

Nationwide Mutual's answer was not styled as a "plea in intervention," but that is, effectively, what Nationwide Mutual did with this pleading: it intervened in the cases as a defendant—denying the plaintiffs' allegations—even though the Able and Adkins parties did not assert any claims against it. *See Ford Motor Co.*, 442

43

S.W.3d at 275 (stating that intervenors can occupy position of defendant when claims and prayer align them with defendant and "pit them directly against the plaintiff, even if no parties assert claims against them"); *see also* TEX. R. CIV. P. 60 (providing that "[a]ny party may intervene by filing a pleading"); TEX. R. CIV. P. 45 (providing that pleadings in district courts shall "be by petition and answer"); *Garden Oaks Maint. Org. v. Chang*, 542 S.W.3d 117, 124 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (stating that courts "look to the substance of a plea for relief, not merely its titles and headings, to determine the nature of relief sought").

Nationwide Mutual was not required to obtain the permission of the trial courts before it intervened; instead, once it filed its answers, it was a party to the cases for all purposes, subject to the Adkins and Able parties' filing a motion to strike the intervention and the trial court's granting such a motion. *Nghiem*, 567 S.W.3d at 721; *Center Rose Partners*, 587 S.W.3d at 531; *Abdullatif*, 460 S.W.3d at 694 n.9. Here, the Adkins and Able parties did not move to strike Nationwide Mutual's answer, either in the original trial courts or in the MDL court, and no court granted a motion to strike. Nationwide Mutual was therefore a party to the cases at the time it filed the notice of transfer to the MDL court, and transfer to the MDL court was permissible on this basis.

**B. Whether the MDL Rules Apply to the Actions**

The Adkins and Able parties also argue that the MDL court erred by denying their motions to remand their respective cases to the Jefferson County court and the Orange County court because, under Civil Practice and Remedies Code section 90.010(a)(3), the MDL rules did not apply to their cases and, therefore, the MDL court lacked subject-matter jurisdiction over the cases.

*1. Construction of Section 90.010(a), (b), and (d)*

When construing a statute, our objective is to determine and give effect to the Legislature's intent. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). The enacted language of a statute—which necessarily includes any enacted statement of policy or purpose—is the "surest guide to what lawmakers intended." *Id.* (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 463 (Tex. 2009)). The plain meaning of the statutory language is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *see Youngkin*, 546 S.W.3d at 680 (stating that courts construe statute's words according to plain and common meaning unless contrary intent is apparent from context or such construction leads to absurd results). "[L]egislative intent derives from an act as a whole rather than from isolated portions of it." *Youngkin*, 546 S.W.3d at 680.

45

"We must endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding). We must not interpret a statute in a manner that renders any part of it meaningless or superfluous. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008). Instead, we must enforce the statute as written and "refrain from rewriting text that lawmakers chose." *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (quoting *Entergy Gulf States*, 282 S.W.3d at 443); *Synatzske*, 438 S.W.3d at 52 ("We do not read words into a statute to make it what we consider to be more reasonable, rather we may do so only to prevent an absurd result.").

As discussed above, the MDL panel first established a pretrial court for asbestos litigation in 2003. In 2005, the Legislature enacted Civil Practice and Remedies Code Chapter 90, which contains provisions relevant to claims involving asbestos and silica related injuries. Section 90.003 requires a claimant asserting an asbestos-related injury to serve on each defendant a report completed by a board-certified physician stating that the person has been diagnosed with malignant mesothelioma or other asbestos-related cancer and, to a reasonable degree of medical probability, asbestos exposure was a cause of the diagnosed mesothelioma or other cancer. TEX. CIV. PRAC. & REM. CODE ANN. § 90.003(a)(1). Section 90.006(c) provides that, in an action pending on the date Chapter 90 becomes law—September

46

1, 2005—and in which the trial commences more than 90 days after that date, the report required by section 90.003 must be served on each defendant on or before the earlier of (1) 60 days before trial commences or (2) 180 days after Chapter 90 becomes law. *Id.* § 90.006(c).

Section 90.010 contains provisions relating to MDL proceedings. It provides, in relevant part:

(a)  The MDL rules apply to any action pending on the date this chapter becomes law [September 1, 2005] in which the claimant alleges personal injury or death from exposure to asbestos or silica unless:

(1)  the action was filed before September 1, 2003, and trial has commenced or is set to commence on or before the 90th day after the date this chapter becomes law, except that the MDL rules shall apply to the action if the trial does not commence on or before the 90th day after the date this chapter becomes law;

(2)  the action was filed before September 1, 2003, and the claimant serves a report that complies with Section 90.003 or 90.004 [concerning silica injuries] on or before the 90th day after the date this chapter becomes law; or

(3)  the action was filed before September 1, 2003, and the exposed person has been diagnosed with malignant mesothelioma, other malignant asbestos-related cancer, or malignant silica-related cancer.

(b)  If the claimant fails to serve a report complying with Section 90.003 or 90.004 on or before the 90th day after the date this chapter becomes law under Subsection (a)(2), the defendant may file a notice of transfer to the MDL pretrial court. If the MDL pretrial court determines that the claimant served a report that complies with Section 90.003 or 90.004 on or before the 90th day after the date this chapter becomes law, the MDL pretrial court

47

shall remand the action to the court in which the action was filed. If the MDL pretrial court determines that the report was not served on or before the 90th day after the date this chapter becomes law or that the report served does not comply with Section 90.003 or 90.004, the MDL pretrial court shall retain jurisdiction over the action pursuant to the MDL rules.

. . . .

(d) In an action that was pending on August 31, 2005, that was transferred to and remains pending in an MDL pretrial court, the MDL pretrial court shall not remand such action for trial unless:

(1) the claimant serves a report complying with Section 90.003 or 90.004;

. . . .

*Id.* § 90.010(a)–(b), (d).

Only one Texas court has addressed the interplay between subsections (a), (b), and (d) of section 90.010. In *In re Fluor Enterprises, Inc.*, plaintiffs filed a personal injury and wrongful death lawsuit arising out of asbestos exposure in Travis County in January 2004 against numerous defendants. *See* 186 S.W.3d 639, 641 (Tex. App.—Austin 2006, orig. proceeding). In February 2006, four days before the parties' scheduled trial date, a group of defendants filed a notice of transfer to the MDL pretrial court in Harris County—the same MDL court as in this case. *Id.* at 642. The MDL court immediately remanded the case back to Travis County. *Id.* The defendants sought mandamus relief in the Austin Court of Appeals, arguing that the MDL court abused its discretion in remanding the case under section 90.010 because

48

it was undisputed that the plaintiffs had not served the medical reports required by section 90.003. *Id.* at 641.

The Austin Court first noted that the defendants had tried to transfer the case to the MDL court under section 90.010(b). *Id.* at 643. The court held that subsection 90.010(b) did not provide a basis to transfer that particular case to the MDL court, reasoning:

> Subsection 90.010(b) states, in part: "If the claimant fails to serve a report complying with Section 90.003 or 90.004 on or before the 90th day after the date this chapter becomes law *under Subsection (a)(2)*, the defendant may file a notice of transfer to the MDL pretrial court." By its express terms this provision applies to cases falling within the ambit of subsection (a)(2). Subsection (a)(2) applies only to actions filed before September 1, 2003. This case was filed on January 4, 2004. Subsection 90.010(b) does not apply and, therefore, can provide no basis for the transfer of this case to the MDL proceeding.

*Id.* at 644 (internal citations omitted). The court then stated, "Subsection 90.010(b) sets out what is to be done with cases filed *before* September 1, 2003, in which trial has not commenced before the 90th day after the chapter became law, and that do not involve a malignancy." *Id.*

The court then addressed whether section 90.010(d) creates a right to transfer a case to an MDL proceeding. *Id.* at 645. The court concluded that subsection (d) "does not abrogate the procedural requirements governing transfer to the MDL pretrial court under the MDL rules." *Id.* The court stated:

> Subsection (d) provides that if a case is transferred to or pending in the MDL pretrial court and the claimant has failed to serve a report, the

case must stay there until the report is served or the claimant meets the requirements of subsection (f)(2). This does not abrogate the requirement that a case be transferred to the MDL proceeding in a manner that complies with the applicable MDL rules and procedures put in place by the MDL pretrial court. . . . Otherwise, subsection (d) would stand for the proposition that cases which are plainly excepted from the application of section 90.010 and the MDL rules, such as actions filed before September 1, 2003, in which the exposed person was diagnosed with mesothelioma, would be subject to a notice to transfer to the MDL and once there could not be remanded until section 90.003 reports were served. Such an interpretation is not consistent with the structure of chapter 90 or the specific structure of section 90.010. We believe the better view is that subsections 90.010(a) and 90.010(b) address rights and procedural mechanisms for cases filed before September 1, 2003, and subsection 90.010(d) addresses the disposition of cases that have been transferred to the MDL proceeding either pursuant to 90.010(b) or pursuant to the applicable MDL rules, and that remain in the MDL pretrial court as of September 1, 2005.

*Id.* The Austin Court further noted that, under Rule of Judicial Administration 13, a case is transferred to the MDL pretrial court through a notice of transfer, which "operates to, at least initially, transfer the case to the MDL proceeding." *Id.* at 645–46. Under Rule 13.5, a case is deemed transferred when the notice of transfer is filed, thus "put[ting] the case within the jurisdiction of the MDL pretrial court subject to that court's review of the transfer and subject to any motion to remand filed by a party who objects to the transfer." *Id.* at 646.

The Austin Court disagreed with the defendants' argument that, once a party has "tagged" a case to the MDL proceeding, the transfer is complete and the MDL court can only remand the case if the requirements of section 90.010(d)—the serving of the medical report required by section 90.003—are met. *Id.* The court reasoned

50

that, when the Legislature passed section 90.010, it did so "with the backdrop of the MDL rules in place," those are the rules that govern how a case is to be transferred to the MDL court, and "[s]ubsection 90.010(d) must be read with the overlay of the MDL rules in mind." *Id.* The court stated that if a case is transferred to the pretrial court "in accordance with the MDL rules," then the pretrial court cannot remand unless the requirements of section 90.010(d) are met. *Id.* "Any other reading" of the statute "would create plainly unintended consequences," such as allowing "defendants to 'tag' cases excepted from the application of the MDL rules to the MDL pretrial court, such as pre-September 2003 mesothelioma cases, and require the MDL pretrial court to retain these cases until the subsection (d) requirements are met." *Id.* The court stated: "Requiring that subsection (d) be read to allow the MDL pretrial court to remand a case if the transfer of the case was not in accordance with the procedural requirements of MDL rules . . . is not inconsistent with the express statutory mandate of subsection (d)." *Id.* Ultimately, the Austin Court held that the MDL court did not abuse its discretion by remanding the case back to Travis County. *Id.* at 647–48.

The parties in this case dispute the proper construction of section 90.010. The Able and Adkins parties argue that, when reading subsection 90.010(a)(3) and subsection 90.010(b) together, it is clear that, as the Austin Court held in *In re Fluor Enterprises*, subsection 90.010(b) does not provide a mechanism to transfer a case

51

that falls under subsection 90.010(a)(3)—that is, cases in which the exposed person has been diagnosed with malignant mesothelioma or another malignant asbestos-related cancer—to the MDL court. They argue that subsection 90.010(b) does not mention subsection 90.010(a)(3) at all, but instead provides solely that a defendant may transfer a case to the MDL court "[i]f the claimant fails to serve a report complying with Section 90.003 or 90.004 on or before the 90th day after this chapter becomes law under Subsection (a)(2)." They therefore argue that plaintiffs who fall under subsection 90.010(a)(3), and have a malignancy diagnosis, are not required to serve the medical report required by section 90.003 as a prerequisite to remand to the original trial court and that requiring them to do so reads language into the statute that is not there and makes subsection 90.010(a)(3) superfluous to subsection 90.010(a)(2), because then there would be no difference between those two classes of claimants. The Able and Adkins parties agree that they will have to comply with the medical report requirement, but they argue that they will have to submit those reports to the original trial courts, not to the MDL court.

The insurance companies, on the other hand, argue that the Adkins and Able parties' construction of section 90.010 ignores the statutory framework of Chapter 90 as a whole. They argue that both section 90.003 and 90.006 require all claimants alleging an asbestos-related injury to file a medical report, and neither section contains an exception for a claimant alleging a malignancy diagnosis. They point out

52

that subsection 90.010(b) allows a defendant to transfer a case to the MDL court "[i]f the claimant fails to serve a report complying with Section 90.003 or 90.004 on or before the 90th day after this chapter becomes law under Subsection (a)(2)" and that, at the time Nationwide Mutual filed the notice of transfer, no medical reports had been served and there was no evidence that each of the claimants had a malignancy diagnosis that would place them within subsection 90.010(a)(3).[7] They therefore argue that Nationwide Mutual properly transferred the case under section 90.010(b).

The insurance companies also argue that, in light of the purpose of Chapter 90 as a whole, the MDL court properly retained jurisdiction over the cases and properly did not remand them to the original trial courts because of the Adkins and Able parties' failure to (1) serve medical reports or (2) otherwise demonstrate that each claimant had malignant mesothelioma or a malignant asbestos-related cancer. The insurance companies argue that, through Chapter 90, the Legislature intended for the MDL court—which, over the years since the court was created in 2003, has developed expertise to evaluate these reports—and not the individual trial courts to determine the timeliness and adequacy of the medical reports. *See Adame*, 585

---

[7]    As the insurance companies point out, although Chapter 90 was enacted in 2005, and the amended petition naming the insurance companies as defendants was filed in 2017, the plaintiffs had never filed or served the medical reports required by section 90.003. Furthermore, the plaintiffs' amended petitions did not allege that *each* claimant had mesothelioma or another asbestos-related cancer.

53

S.W.3d at 134 (discussing Legislature's official comments to Chapter 90 and stating that "Chapter 90 created a bifurcated system to allow those with confirmed impairment to proceed to trial while those without a confirmed impairment would remain in the MDL, without any statute-of-limitations ramifications, until an impairment was confirmed"). They contend that the better reading of section 90.010 gives effect to subsections (b) and (d) by requiring, once a case is transferred to the MDL court, that all claimants file a medical report that complies with section 90.003 as a prerequisite to remand to the original trial court. They argue that adopting the Adkins and Able parties' construction of section 90.010 would lead to an absurd conclusion because the plaintiffs would be allowed to keep their cases out of the MDL court without ever filing the statutorily required medical reports.[8]

### 2. Applicability of MDL Rules to These Cases

We agree with the insurance companies that Nationwide Mutual properly transferred the Adkins and Able litigation to the MDL court pursuant to section 90.010(b). As stated above, section 90.010(b) provides:

---

[8] The insurance companies also argue that this Court should not adopt the reasoning of the Austin Court in *In re Fluor Enterprises* because, as that case was filed in January 2004 and not before September 2003, the MDL rules already applied to that case and there was no need to address the three subsections of section 90.010(a), which set out exceptions to the application of the MDL rules for certain cases filed before September 1, 2003. They also argue that the Austin Court did not address the issue presented in this case: whether remand to the original trial court is permissible when the plaintiffs argue they have mesothelioma or another malignant asbestos-related cancer but the plaintiffs have not filed the statutorily-required medical reports.

If the claimant fails to serve a report complying with Section 90.003 or 90.004 on or before the 90th day after the date this chapter becomes law under Subsection (a)(2), the defendant may file a notice of transfer to the MDL pretrial court. If the MDL pretrial court determines that the claimant served a report that complies with Section 90.003 or 90.004 on or before the 90th day after the date this chapter becomes law, the MDL pretrial court shall remand the action to the court in which the action was filed. If the MDL pretrial court determines that the report was not served on or before the 90th day after the date this chapter becomes law or that the report served does not comply with Section 90.003 or 90.004, the MDL pretrial court shall retain jurisdiction over the action pursuant to the MDL rules.

TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(b).

It is undisputed that the Adkins and Able parties have never filed the medical reports required by section 90.003, let alone filed these reports on or before the 90th day after September 1, 2005, the date Chapter 90 became law. The Adkins and Able parties' amended petitions naming the insurance companies as defendants generally alleged that

> [a]s a result of exposure to asbestos materials and products in the Plant Facilities, Plaintiffs contracted one or more asbestos-related diseases, have either contracted asbestos-related cancer or have an increased risk of contracting cancer, and suffer from cancerphobia or have died from one of these asbestos-related diseases as a result of asbestos exposure.

The amended petitions did not connect a specific diagnosis to a specific plaintiff. Thus, at the time Nationwide Mutual transferred the Adkins and Able litigations to the MDL court, the plaintiffs had presented neither Nationwide Mutual nor any other defendant with evidence that any plaintiff had been diagnosed with malignant

55

mesothelioma or another malignant asbestos-related cancer such that section 90.010(a)(3) applied to preclude the applicability of the MDL rules. Nationwide Mutual properly filed a notice transferring the cases to the MDL court pursuant to section 90.010(b).[9]

Section 90.010(b) provides that if the MDL court determines that the claimant served a report complying with section 90.003 within 90 days of the effective date of Chapter 90, "the MDL pretrial court shall remand the action to the court in which the action was filed." *Id.* If, however, the MDL court determines that the claimant did not serve a report complying with section 90.003, "the MDL pretrial court shall retain jurisdiction over the action pursuant to the MDL rules." *Id.* Section 90.010(d) further provides that in an action that was pending on August 31, 2005, "that was transferred to and remains pending in an MDL pretrial court, the MDL pretrial court shall not remand such action for trial unless . . . the claimant serves a report

---

[9] We agree with the insurance companies that this case is distinguishable from *In re Fluor Enterprises*. Subsection 90.010(a)(2) applies only to cases filed before September 1, 2003, and the underlying litigation in *Fluor Enterprises* was filed on January 4, 2004. *See In re Fluor Enters., Inc.* 186 S.W.3d 639, 644 (Tex. App.—Austin 2006, orig. proceeding). The Austin Court held that because subsection 90.010(a)(2) did not apply to that case, subsection 90.010(b), which permits transfer of a case to the MDL court if the claimant fails to serve a report complying with section 90.003 "on or before the 90th day after the date this chapter becomes law under Subsection (a)(2)," also did not apply and could not provide a basis for transfer of that case to the MDL court. *Id.* at 644. Here, the Adkins and Able cases were filed before September 1, 2003, and the plaintiffs did not file medical reports complying with section 90.003 within 90 days of the effective date of Chapter 90. Transfer of the Adkins and Able litigation to the MDL court was therefore proper under section 90.010(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(b).

56

complying with Section 90.003 . . . ." *Id.* § 90.010(d). The report must be made by a physician who is board certified in pulmonary medicine, occupational medicine, internal medicine, oncology, or pathology and must state that the exposed person has been diagnosed with malignant mesothelioma or another malignant asbestos-related cancer and, to a reasonable degree of medical probability, exposure to asbestos was a cause of the diagnosed mesothelioma or other cancer. *Id.* § 90.003(a)(1).

Section 90.010(a)(3) does not specify how claimants are to demonstrate that they have been diagnosed with malignant mesothelioma or another malignant asbestos-related cancer, such that the MDL rules do not apply to their cases. In considering Chapter 90 as a whole—particularly its requirement that claimants file a medical report that meets the standards set out in section 90.003—we conclude that when a case has been transferred to the MDL court pursuant to section 90.010(b) for failure to timely file a medical report, as the Adkins litigation and the Able litigation were, the claimants must serve a report complying with section 90.003 and demonstrating a diagnosis of malignant mesothelioma or another malignant asbestos-related cancer in order to be entitled to remand from the MDL court to the original trial court. Here, all parties agree that each plaintiff must, at some point during the pendency of the case, serve a medical report complying with section 90.003, but no such medical report has been served on the defendant insurance

companies. We therefore conclude that the MDL court did not abuse its discretion by denying the Adkins and Able parties' motions to remand in the absence of service of medical reports complying with section 90.003.

Furthermore, even if the Adkins and Able parties were not required to serve the medical report required by section 90.003 in order to be entitled to remand and their unauthenticated medical records, accompanied by the affidavit of Dr. McShan, were sufficient to demonstrate the diagnosis required by section 90.010(a)(3), we would still conclude that the MDL court had the power to rule on the insurance companies' special appearances. Because the Adkins and Able parties had not timely served medical reports compliant with section 90.003, Nationwide Mutual properly filed a notice transferring the cases to the MDL court under section 90.010(b). *See id.* § 90.010(b) ("If the claimant fails to serve a report complying with Section 90.003 or 90.004 on or before the 90th day after the date [Chapter 90] becomes law under Subsection (a)(2), the defendant may file a notice of transfer to the MDL pretrial court.").

Under Texas Rule of Judicial Administration 13.6, the MDL pretrial court "has the authority to decide, in place of the trial court, all pretrial matters in all related cases transferred to the court," including matters of jurisdiction and "disposition by means other than conventional trial on the merits". TEX. R. JUD. ADMIN. 13.6(b); *In re Alcon S'holder Litig.*, 387 S.W.3d at 125 (holding that Rule

13 allows MDL pretrial court to hear and decide special appearances and noting that "[a]llowing the pretrial judge to hear and rule on the special appearances avoids the possibility of inconsistent jurisdictional rulings both at the trial level and on interlocutory appeal"). As discussed above, Rule of Civil Procedure 120a, governing special appearances, has both a due order of pleading and a due order of hearing requirement. *See* TEX. R. CIV. P. 120a(1)–(2). The due order of hearing requirement states that "[a]ny motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." TEX. R. CIV. P. 120a(2). As the Judicial Panel on Multidistrict Litigation stated in *In re Alcon Shareholder Litigation*, "[i]t certainly makes sense to require a trial court to hear and decide a special appearance before moving on to other pleas and motions—it is pointless for the court to rule on other matters if it has no jurisdiction over the parties." *See* 387 S.W.3d at 125.

A court must possess both subject-matter jurisdiction over the controversy and personal jurisdiction over the parties to issue a binding judgment. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). In *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), the United States Supreme Court addressed whether a "jurisdictional hierarchy" exists, such that a court must always address whether it has subject-matter jurisdiction before it addresses whether it has personal jurisdiction. Subject-matter jurisdiction must be

59

present for a court to make a ruling on the merits of the case, but the principle that subject-matter jurisdiction "necessarily precedes a ruling on the merits . . . does not dictate a sequencing of jurisdictional issues." *Id.* at 584. Lack of personal jurisdiction is a "non-merits" ground for dismissal, and therefore a court that dismisses a case based on lack of personal jurisdiction before finding that subject-matter jurisdiction exists "makes no assumption of law-declaring power that violates the separation of powers principles underlying" two prior Supreme Court cases holding that subject-matter jurisdiction must be established as a threshold matter before ruling on the merits of a case. *Id.* at 584–85. The Court "recognize[d] that in most instances subject-matter jurisdiction will involve no arduous inquiry" and, typically, that question should be resolved first. *Id.* at 587. The Court held, however, that courts are not required to address subject-matter jurisdiction before personal jurisdiction, stating that when a court "has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Id.* at 588.

The Supreme Court reaffirmed this holding in *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), a case in which the trial court dismissed an action based on forum non conveniens before addressing whether it had subject-matter jurisdiction or personal jurisdiction. The Court

discussed its prior opinion in *Ruhrgas* and stated that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Id.* at 431 (quoting *Ruhrgas AG*, 526 U.S. at 585). "[J]urisdiction is vital only if the court proposes to issue a judgment on the merits." *Id.* (quoting *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006)). Forum non conveniens, like personal and subject-matter jurisdiction, is a "non-merits ground for dismissal." *Id.* at 432. The Supreme Court therefore concluded that a court "may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.*; *see also id.* at 436 ("[W]here subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").

This Court, and two of our sister intermediate courts of appeal, have followed *Ruhrgas* and *Sinochem* and have held that a trial court need not address non-merits issues such as subject-matter jurisdiction, personal jurisdiction, and forum non conveniens in a particular order. *See Schippers v. Mazak Props., Inc.*, 350 S.W.3d 294, 296–97 (Tex. App.—San Antonio 2011, pet. denied); *Vinmar Trade Fin., Ltd. v. Utility Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 671–72 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 180 n.39 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (noting

61

that appellant argued trial court lacked subject-matter jurisdiction, but declining to reach that question because trial court lacked personal jurisdiction and erred in denying appellant's special appearance); *see also Jack M. Sanders Family Ltd. P'ship v. Roger T. Fridholm Revocable, Living Tr.*, 434 S.W.3d 236, 240 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("When faced with multiple jurisdictional questions, this court need not address them in a particular order."); *Metro. Christian Methodist Episcopal Church v. Vann*, No. 01-12-00332-CV, 2013 WL 1932171, at *3 (Tex. App.—Houston [1st Dist.] May 9, 2013, no pet.) (holding that federal district court did not err by determining personal jurisdiction challenge before subject-matter jurisdiction challenge, therefore federal court's order dismissing federal action was not void and was entitled to preclusive effect on question of personal jurisdiction in state court action).

Here, the insurance companies filed special appearances, challenging the exercise of personal jurisdiction over them in Texas courts. The Adkins and Able parties filed motions to remand, challenging the MDL court's subject-matter jurisdiction over the actions. The MDL court granted the special appearances of all of the insurance companies in the Able action and all of the insurance companies except for Massachusetts Bay in the Adkins action, ruling that Texas courts lacked personal jurisdiction over the insurance companies and dismissing the plaintiffs' case against the insurance companies. This was a non-merits basis for dismissal of

62

the actions. *See Ruhrgas*, 526 U.S. at 584–85. The MDL court thus had the power to rule on the insurance companies' special appearances, and its orders granting the special appearances are not void.

As the insurance companies point out, the Adkins and Able parties do not challenge the merits of the MDL court's rulings granting the special appearances by contending on appeal that the insurance companies have sufficient contacts with Texas such that suit can be maintained in this state consistent with due process. Generally, to obtain reversal on appeal, an appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If an independent ground fully supports the complained-of ruling or judgment but the appellant assigns no error to that ground on appeal, "we must accept the validity of that unchallenged independent ground" and "any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment." *Id.*; *see Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 424 (Tex. App.—Dallas 2009, no pet.). The MDL court had the power to grant the insurance companies' special appearances. The Adkins and Able parties do not challenge the merits of those rulings—an independent ground that fully supports the dismissal of the suit against the insurance companies—on appeal. We conclude that the Adkins and Able parties have not

63

demonstrated that they are entitled to reversal of the MDL court's orders granting the insurance companies' special appearances.

We therefore hold that the MDL court has subject-matter jurisdiction over the Adkins and Able litigation and its rulings on the insurance companies' special appearances—the merits of which are not challenged by the Adkins and Able parties on appeal—are not void.[10]

---

[10]   We note that the Adkins and Able parties' claims against Nationwide Mutual and the Adkins parties' claims against Massachusetts Bay remain pending in the MDL court. Nothing in this opinion should be read as preventing the plaintiffs, upon obtaining the statutorily-required medical reports under section 90.003, from seeking remand of the cases back to the original trial courts should the medical reports reflect that the plaintiffs have a diagnosis of malignant mesothelioma or another malignant asbestos-related cancer and thus that they fall under section 90.010(a)(3).

## Conclusion

We affirm the order of the MDL court denying Massachusetts Bay's special appearance in the Adkins litigation. We affirm the judgment of the MDL court denying the Adkins parties' and the Able parties' motions to remand. We further affirm the judgment of the MDL court granting the special appearances filed by Travelers Property Casualty Company, St. Paul Protective Insurance Company, Great American Insurance Company, Axis Insurance Company, and United States Fire Insurance Company in the Adkins litigation. We affirm the judgment of the MDL court granting the special appearances filed by all of the insurance companies in the Able litigation.

 

 

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Kelly, and Landau.